IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK MCDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:12-cv-3592-TMP |
| | ) | |
| TOBY THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL MEMORANDUM OPINION

This cause is before the court on the supplemental motion for summary judgment filed on April 10, 2015, by the defendant, Toby Thomas.  (Doc. 75). Defendant seeks dismissal of plaintiff's state-law claims of negligence and wantonness based on state-agent immunity.   The same issue was raised in the first motion for summary judgment (doc. 57), and the plaintiff argued in response that the defendant had acted willfully, maliciously, or beyond his authority by failing to follow the state's guidelines for the use of force, which removed the protections offered by state-law immunity (doc. 60, pp. 23-24).   The court denied the motion for summary judgment on the state-law claims, and determined that the defendant was not entitled to state-agent immunity where the defendant acted willfully or maliciously.  (Doc. 68, p. 21).   The court's memorandum opinion failed to make

clear whether state-agent immunity was a defense available only to McDonald's claim that the defendant acted willfully, or whether the defense also may be available to a claim that the defendant acted negligently in failing to follow the specific rules and regulations set forth for prison guards.   This matter has been briefed – arguably twice.[1]   The court has considered the pleadings, evidence, and the arguments set forth by both parties.   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

---

[1]      A review of all of the briefs filed in association with the first motion for summary judgment indicates that the issues raised here were raised, at least in passing, in the first motion. Defendant asserted that he is entitled to state-agent immunity from the negligence claim.   The plaintiff, in response to the first motion for summary judgment, responded that the conduct of Thomas was willful, malicious or in bad faith, and therefore outside of the protections offered by state-law immunity.   The court agreed and denied the immunity defense based on the allegations of malicious or willful conduct. Because the court's first memorandum opinion fell short of fully addressing the applicability of state-agent immunity to plaintiff's claims if Thomas was merely negligent, this opinion may be viewed more as a clarification than as a second opinion, and the motion may be more aptly deemed one for clarification than a supplemental motion for summary judgment.   In any event, the result of these two opinions should be to ascertain, before trial, which claims or defenses raised in the Complaint and Answer may be presented at trial.

## FACTS[2]

Plaintiff Frederick McDonald brought this action seeking declaratory relief, compensatory and punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1983 and Alabama state law, contending that the defendant used excessive force in subduing him after a verbal altercation.   Applying the summary judgment standards to the evidence in the record, the following facts appear to be undisputed, or, if disputed, are viewed in the light most favorable to the non-moving plaintiff.

McDonald's claims arise from an incident that occurred while he was serving a term of imprisonment at the Limestone Correctional Facility in Harvest, Alabama. According to the complaint commencing this action, McDonald was an inmate at the Limestone Correctional Facility on July 1, 2012.    McDonald was being housed in the "G-Dorm," which was a large bunkhouse with approximately 250 inmates who are involved in a substance abuse program offered by the prison.   The main living area was not air-conditioned, and July 1, 2012, was an extremely hot day. Adjoining classrooms and TV rooms were air-conditioned.   The G-Dorm was being

---

[2]       The facts set forth herein were composed by the court in the memorandum opinion entered to resolve the defendant's first motion for summary judgment (doc. 68).  The instant motion does not turn on any new or different facts, but presents a question of the application of Alabama state law regarding state-agent immunity to claims of negligence.

supervised on that day by only one officer, defendant Toby Thomas.   (McDonald Depo., Doc. 57-2, p. 7).

McDonald saw that Thomas was in one of the air-conditioned rooms to the side of the dorm, not in the central guard area, and that Thomas could not see the inmates or the dorm.   (Doc. 57-2, p. 7).   The inmates were in line to receive ice, which was handed out in response to the hot weather.   McDonald was near the back of the line and was loud and complaining, while Thomas was sitting in the air-conditioned room.[3]   McDonald was irritated because he said Thomas had taken a large portion of the ice into the office and had instructed the senior inmates to hand out only half a scoop to each inmate instead of a full scoop.   McDonald was saying loudly, "I feel like my life in danger because you're not supervising the dorm." (Doc. 57-2, pp. 8-9).[4]   Thomas became upset and told McDonald to pack up his belongings and go the shift commander's office.   (Doc. 57-2, pp. 8-9).   McDonald

---

[3]     Other inmates stated that McDonald had been in line earlier without a shirt on, and that Thomas had ordered McDonald to go put on a shirt and had called him a "bitch."   McDonald left the line to put on his shirt.   McDonald returned to the line with the shirt unbuttoned, which upset Thomas, who cursed at McDonald again.   (Ford Affi., doc. 61-3, ¶¶ 3-4; Hicks Affi., doc. 61-2, ¶ 5).

[4]     Defendant Thomas testified that McDonald had been talking to him while in line and was belligerent, and that Thomas politely asked him "maybe two or three times to cease behavior" and "basically please stop."   (Thomas Depo., Doc. 57-3, p. 12).   Thomas says that he then told McDonald to go to his bunk and get his belongings but that McDonald was "meandering."   (Id. at p. 13).

said that Thomas's statement was: "If you feel like your life is in danger you pack your shit and get the fuck out of this dorm." (Doc. 57-2, pp. 8-9). McDonald didn't move at that time, because he said he didn't feel like his life was in danger, but after Thomas kept looking at him, McDonald said, "You for real?" (Doc. 57-2, pp. 8-9). Thomas answered: "Hell, yeah, I'm for real. Go get your shit and get the fuck out this dorm." (Id.) At that point, McDonald went to his bunk. (Id.)

McDonald bent over to get some of his belongs from under the bottom bunk. (Doc. 57-2, at p. 10). A fellow inmate saw McDonald bending down to get his things, and Thomas walked quickly toward McDonald's bunk, cursing at McDonald, with an angry expression on his face. (Jones Affi., doc. 61-1, ¶ 3-4). McDonald turned and saw Thomas approaching him with his baton, and asked: "What is the purpose of the stick?" (Doc. 57-2, p. 10). Thomas cursed at him, and McDonald cursed back at him. (Id.) McDonald returned to packing his belongings, and Thomas rushed up to the bunk and hit McDonald in the back of the head with his baton. (Doc. 57-2, pp. 10-11). Inmate witnesses have stated that McDonald was not acting in a physically threatening or physically aggressive manner when Thomas struck him. (Sloan Affi., doc. 61-4, ¶ 6). Thomas raised his baton with both hands and hit McDonald with an overhead strike on the back of the head, which sounded like a loud crack. (Jones Affi., doc. 61-1, ¶ 5). Thomas continued to hit

McDonald with his baton four more times, on the shoulder, side, shin and feet. (Doc. 57-2, pp. 10-11).[5]   Another inmate described the blow to McDonald's head as one from the baton "held high over [Thomas's] head," and said Thomas "kept hitting [McDonald] after he was knocked down."   (Hicks Affi., Doc. 61-2, ¶ 8).   Another inmate described the blow to the head similarly, noting that Thomas hit McDonald from behind while McDonald was bent down collecting his belongings.   (Ford Affi., Doc. 61-3, ¶¶   6-7).   McDonald did not move toward Thomas, but was "bent over at his bed when Officer Thomas came up to him from behind and hit him."   (Ford Affi., doc. 61-3, ¶ 7).   Inmate Jack Hershiser's statement recounted that "before the guy [McDonald] could straighten up Officer Thomas hit him with the stick 2-3 times."   (Doc. 61-5, p. 22).   The statement of Shannon Williams stated that Thomas "continued to hit him while he was down until inmates started to yell stop beating him."   (Doc. 61-5, p. 23).   Thomas said he did not hit McDonald for being slow, but "for spooking me".   (Thomas Depo., Doc. 57-3, p. 93).[6]

---

[5]      Thomas does not dispute that the blow to McDonald's head was an overhead blow, but says he had no choice because of the proximity to the bunks.

[6]      Thomas essentially asserts that McDonald was inciting a riot, or urging other inmates to create a disturbance, but this assertion is at odds with every inmate's account of the events.   The only testimony that McDonald made any type of aggressive move is that Thomas said McDonald "kind of comes toward me" when he asked about the baton, and that "it kind of spooked me."   (Doc. 57-3, p. 13).

After hitting McDonald, Thomas called for back-up. (Jones Affi., doc. 61-1, ¶ 8; Ford Affi., doc. 61-3, ¶ 8; Sloan Affi., doc. 61-4, ¶ 7).[7] Inmates Shannon White and Mike Alexander intervened by physically holding back Thomas to make him stop, and other inmates yelled at Thomas to stop hitting McDonald. (Doc. 57-2, p. 11, doc. 61-4, ¶ 7). The inmates then helped McDonald off the floor, and several corrections officers arrived in the dorm. (Doc. 57-2 at p. 11). The officers circled Thomas to protect him from the inmates. McDonald was taken to the health care unit where he was treated for a two-inch cut to the back of his head and a two-inch cut to his shin. (Doc. 57-2, p. 11; Incident Report, Doc. 61-5). He also suffered from dizziness, blurred vision, bruising and swelling. He says that his head wound has caused severe, continuing headaches. (Id. at p. 12).

The Alabama Department of Corrections conducted a use-of-force investigation into the incident. The conclusion of the captain investigating the incident was that "this use of force was not necessary." (Doc. 61-5, pp. 28-29).[8]

---

[7]    Thomas testified that he called for backup before he got his baton. (Doc. 57-3, pp. 13, 88). When questioned further, however, he said he was "a little fuzzy" as to when he called for assistance. (Id. at 24).

[8]    The Alabama Department of Corrections has rules concerning the use of force, which will not be set forth herein because the document has been filed under seal and is subject to a protective order for security reasons. (Plaintiff's Ex. 8, filed August 7, 2014). Viewing the facts in the light most favorable to the inmate plaintiff, the use of physical force applied by Thomas did not fall under one of the categories in which such force would be appropriate under ADOC guidelines.

He further concluded that "[r]ather than wait for backup, Officer Thomas followed Inmate McDonald to the bed area where this incident continued to escalate from a verbal altercation to an excessive application of force."   Id.[9]

The defendant argues that the state-law negligence and wantonness claims brought against Thomas, who is being sued in his individual capacity, are due to be dismissed because the plaintiff has failed to prove a *prima facie* case of negligence, and also because the defendant is entitled to state-agent immunity.

## DISCUSSION

The court has determined already that the plaintiff's version of the events, which are taken as true for the purpose of resolving the defendant's motion for summary judgment, establishes that the actions of Thomas could be found to fall into the category of conduct that is "wanton, arbitrary, or intended to punish" and is therefore actionable under Section 1983.   Qualified immunity does not shield Thomas from liability where he acted with malicious or sadistic intent.   Similarly, such malicious intent overcomes the application of state-agent immunity under

---

[9]      In his brief, plaintiff asserts that disciplinary action was taken against Thomas for excessive use of force and that Thomas did not appeal the disciplinary action.   The deposition testimony cited in support of that assertion, however, was not included in the excerpts provided to the court.

8

Alabama law with respect to claims based in state law.   Defendant's supplemental

motion points out that still pending is the plaintiff's state-law claims based on the

alleged negligent, reckless, or wanton conduct of Thomas.   Defendant asserts that,

as to claims for negligence, recklessness, or wantonness, the plaintiff has not met the

burden of coming forward with a *prima facie* case.[10]   Defendant further asserts that,

even if that initial burden has been met, plaintiff has failed to demonstrate that the

defendant is not entitled to state-agent immunity against such claims.   Plaintiff's

theory appears to be that, even if Thomas did not hit him with the malicious or

sadistic motive required to sustain a 1983 action, the defendant's actions in hitting

him with his baton were negligent, reckless, and wanton, in violation of Alabama

law.   Plaintiff essentially argues that, even if a jury were to disbelieve the

---

[10]   The defendant argues that the plaintiff has failed to prove that a duty exists under Alabama law that was breached, and that proximately caused damage to the plaintiff. The Amended Complaint recites that "Defendant Thomas negligently breached his duty to Plaintiff to not cause Plaintiff any harm."   (Doc. 26, ¶ 34).   The court finds that there is a duty imposed upon a prison official "to exercise ordinary and reasonable care for the protection of persons in their custody."   Patton v. Thompson, 958 So. 2d 303 (Ala. 2006).   The plaintiff further argues that the duty was breached because Thompson failed to follow the rules and regulations which govern the use of force by corrections officers, and relies upon Giambrone v. Douglas, 874 So. 2d 1046 (Ala. 2003), as authority for the proposition that acting outside of specific rules strips a state agent of the state-law immunity.   In the previous order denying summary judgment, the court noted that where a state agent acts in contradiction to specific rules or regulations, he may be found to be "beyond his authority" so as to remove the protection of state-agent immunity, citing Giambrone and Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000).

plaintiff's version of events, which describe an intentional and malicious assault, the jury could find that Thomas *negligently* or *recklessly* used his baton in a manner not permitted by ADOC regulations.

McDonald is attempting to ride two horses in different directions at the same time.   The plaintiff's version of events, supported by his own testimony and that of several witnesses, is that Thomas approached him in anger, while he was complying with Thomas's order, and hit him in the head, from behind, with a two-handed overhead strike with the metal baton, and then continued to strike him after he was down on the bunk.   In pursuing a negligence claim, he is asking the jury to find in his favor, even if the jury does not believe *any* of the plaintiff's evidence, and instead believes Thomas's version of the story.   Thomas's version of the events, which cannot be considered true for purposes of this motion, is that he was "spooked" by McDonald, that he tried to strike McDonald in the torso as McDonald made a threatening move toward him, but that he missed and hit McDonald in the head because McDonald ducked.   Thus, the summary judgment question here is whether plaintiff can rely upon the defendant's version of events (which describe a *negligently* inflicted injury) even though doing so completely contradicts plaintiff's own version of the events.

10

In a somewhat similar case, the Eleventh Circuit Court of Appeals has held that summary judgment requires the court to accept as true the nonmoving plaintiff's version of events, even if other witnesses offer a better version for the plaintiff.   The appellate court explained:

> When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant.   Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*.   Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.

Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).   Where the plaintiff has described events underlying his claim, that description is credited by the court in opposition to summary judgment.   The court may not disregard what the plaintiff says happened simply because other witnesses may describe an even more favorable scenario.

It appears to the court that the plaintiff has demonstrated that there exists a duty to exercise reasonable care in dealing with the inmates, and that the injuries

inflicted upon the plaintiff are sufficient to show that the duty was breached.    The court further is convinced that the state-agent immunity sought by defendant is unavailable to him where he failed to follow the ADOC rules for the use of force, and that failure has been documented by the agency responsible for making and enforcing those rules.    At the same time, however, the court is mindful that the factual evidence on which the plaintiff has relied thus far paints an entirely different picture than one of negligence.   The plaintiff, numerous witnesses, and the ADOC have described a scenario in which the defendant intentionally and maliciously hit the plaintiff over the head, with a two-handed blow, from behind, while the plaintiff was complying with the defendant's instructions and while he was not posing any threat. While pleading in the alternative is an acceptable practice, once a case is tested by summary judgment, a plaintiff is not allowed simply to disavow his own version of events, pick some favorable facts offered by contradicting witnesses, and piece together the elements of a different legal theory than is supported by plaintiff's own version of events.   The nonmoving plaintiff's version of events must serve as the basic description of the relevant events, assumed to be true for purposes of the motion, and the court is not entitled to disregard those events in favor of other facts, whether they are more or less helpful to the plaintiff.   The *plaintiff's* facts must be assumed to be true.

12

In this case, where a jury could find that Thomas struck McDonald in a malicious manner, and where Thomas was found by the Alabama Department of Corrections to have failed to adhere to the rules regarding use of force, he is not entitled to state-agent immunity.  However, the facts, viewed in the light most favorable to the plaintiff, do not make up a *prima facie* case of negligence.  The plaintiff's version of events unmistakably describes an intentional assault.  He cannot ask the court to disregard his version of the events in order to advance a negligence claim not supported by his version.  Accordingly, the motion for summary judgment on the state-law negligence claim is due to be granted.

The same is true of any state-law claim for recklessly or wantonly causing injury to the plaintiff.  Once again, the plaintiff's own version described Thomas as angry *at him*, of coming up behind *him* for the purpose of striking *him*, and that he did so with a two-handed, overhand blow to bring the maximum amount of force possible.  This describes an intentional assault on the plaintiff.  There is no evidence or reasonable view of the evidence that plaintiff was injured unintentionally because Thomas was flailing wildly and recklessly in a crowd.  To the extent that the motion seeks dismissal of the claim for reckless and/or wanton conduct under state law, therefore, the motion also is due to be granted.  The plaintiff will not be allowed to present at trial a negligence, recklessness, or

13

wantonness claim, which must rest upon a set of facts that is completely contrary to his own evidence.

## **CONCLUSION**

Based on the foregoing undisputed facts and legal conclusions, the court finds that the supplemental motion for summary judgment filed by the defendant is due to be GRANTED.   A separate order will be entered in accordance with the findings set forth herein.

DATED the 25TH day of June, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE